IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-14-0083 |
| JUWAN ARMARNI WATKINS, | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Juwan Watkins' Request for Reconsideration (ECF No. 347), which the Court construes as a motion. The time for the government to file a response has passed, *see* Local Rules 207.1, 105.2(a) (D. Md. 2025), and the motion is ripe for decision. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

### A. The Offense and Sentencing

The Court previously recounted the facts of the case as follows:

> On January 15, 2014, Defendant and three co-conspirators robbed an armored truck outside of a restaurant. (ECF No. 76-1.) During the robbery, the co-conspirators brandished firearms at the armored truck drivers. (*Id.*) A civilian observed the robbery and followed Defendant and his co-conspirators as they drove away from the scene. (*Id.*) When the robbers realized the civilian was following them, one or more of the co-conspirators discharged their weapons at the civilian's car, causing bodily injury to the civilian. (*Id.*) Defendant did not discharge a firearm at the civilian. (*Id.*)

(ECF No. 344 at 1.)

After his arrest, Defendant pled guilty before Judge Hazel to Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) and Using, Carrying, Brandishing, and Discharging a Firearm

During and In Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). (ECF No. 76.) At sentencing, Judge Hazel noted that the base offense level for the § 1951(a) count was 20. (ECF No. 195 at 5.) But the government sought application of an upward departure to base offense level 33 based on Defendant's alleged intent to murder the civilian. (*Id.*) After holding an evidentiary hearing, Judge Hazel concluded that the upward departure was warranted pursuant to § 2B3.1, Application Note 5, of the Sentencing Guidelines. (ECF No. 344 at 2.) Ultimately, after a three-level reduction for Defendant's acceptance of responsibility, Defendant's total offense level was 30. (*Id.*) Judge Hazel found that Defendant's total criminal history score was three, which was based on a subtotal criminal history score of one combined with two "status points" because Defendant committed the offenses while under a "criminal justice sentence" for a different offense. (*See id.* at 3.) This yielded a criminal history category of II. (*See id.*) Thus, Defendant's Guidelines range was 108–135 months of imprisonment on the § 1951(a) violation. (*Id.* at 2.) However, Judge Hazel imposed a variant sentence of 90 months' imprisonment because he found that the upward departure, while legally warranted, slightly overstated Defendant's overall culpability. (*Id.*) He also sentenced Defendant to a mandatory consecutive sentence of 120 months' imprisonment on the § 924(c) count. (*Id.*)

### B. The Prior Motion for a Sentence Reduction

In September of 2025, Defendant sought a reduction in his sentence based on two grounds. First, he argued that he was entitled to a sentence reduction based on the retroactive effect of Amendment 821 to the U.S. Sentencing Guidelines. Second, Defendant argued that pursuant to 18 U.S.C. § 3582(c)(1), extraordinary and compelling reasons warranted a sentence reduction. The Court rejected both arguments. (ECF No. 344.) However, as to Amendment 821, the Court did conclude that the two status points that increased Defendant's criminal history score and

2

category would no longer be assessed if he were sentenced today. (*Id.* at 3.) But the Court was unable to reduce Defendant's sentence on this basis because even with a total offense level of 30 and a criminal history category of I, Defendant's updated Guidelines range of 97–121 months was still greater than the variant sentence he received of 90 months. (*Id.* (citing U.S.S.G. § 1B1.10(b)(2)(A)).)

## II. DISCUSSION

Defendant now seeks two forms of relief. First, Defendant seeks reconsideration of the Court's denial of the § 3582(c)(1) motion. Second, while Defendant concedes that he is not entitled to a sentence reduction pursuant to Amendment 821, he asks the Court to order that his criminal history score be reduced in light of Amendment 821 because such a reduction may afford him more privileges during his incarceration. The Court will deny both requests.

### A. Sentence Reduction

The Court begins with Defendant's request for reconsideration of the denial of a sentence reduction. Defendant argues that the Court may reconsider its prior ruling pursuant to Federal Rule of Criminal Procedure 57(b), which allows a judge to "regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." The Court must reject this argument, however, because the Fourth Circuit has made clear that "a motion to reconsider is not a proper vehicle to seek review of a ruling on a § 3582 motion." *United States v. Hatches*, No. 12-6310, 2012 WL 2024043, at *1 n.* (4th Cir. 2012) (citing *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010)).

Even if the Court could reach the merits, it would still deny Defendant's request. Previously, Defendant argued that Judge Hazel had not held an evidentiary hearing addressing whether to apply the upward departure to his offense level. But, as the Court explained, this claim

3

was likely not cognizable on § 3582 review because it sought to attack the validity of Defendant's sentence, which may only be done through a motion pursuant to 28 U.S.C. § 2255. (ECF No. 344 at 3 (citing *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022)).)[1] And even if this claim were cognizable, Judge Hazel did hold such a hearing, and the Court agreed with his conclusion. (*Id.* at 3–4.) In the instant motion, Defendant provides no reason for the Court to alter this decision. Thus, the application of the upward departure is not an extraordinary and compelling reason warranting a sentence reduction.

Defendant next reasserts his argument that a combination of a change in law, his allegedly unusually long sentence, and his youth at the time of the crime constitutes an extraordinary and compelling reason warranting relief. As in his first motion, Defendant cites to *Dean v. United States*, 581 U.S. 62 (2017), which held that judges may consider the effect of § 924(c)'s mandatory minimum "when calculating a just sentence for the predicate count." *Id.* at 69. But as the Court previously explained, "there is no evidence in the record that Judge Hazel would have calculated Defendant's sentence on the § 1951(a) count differently had *Dean* already been decided" when Judge Hazel imposed sentence. (ECF No. 344 at 4.) Further, Defendant's sentence was not unusually long. Defendant's sentence was in the middle of the range of sentences issued to each of the defendants in this case. (*Id.*) And, as the government noted in its response, Defendant's total sentence of 210 months was only marginally more than the average sentence of 201 months for someone with Defendant's offense characteristics. (*See* ECF No. 342 at 7.) Finally, Defendant's "youth at the time of offense alone is insufficient to justify sentence reduction."

---

[1] In his Motion, Defendant notes the possible relevance of the Supreme Court's (then-pending) decision in *Fernandez v. United States*, 608 U.S. ___ (2026), which was decided on May 28, 2026. In that case, the Supreme Court held that a prisoner may not use § 3582 as a vehicle to bring claims that collaterally attack the validity of his conviction. *Id.* (slip op., at 1). Here, Defendant attacks only the validity of his sentence, not the validity of his conviction. While *Fernandez* may well be extended to cover cases such as this one, the Court need not consider *Fernandez* here because the Fourth Circuit has already held in *Ferguson* that collateral attacks on sentences are not cognizable on § 3582 review. *Ferguson*, 55 F.4th at 270. Thus, the Court is already bound by this principle regardless of *Fernandez*.

4

*United States v. Bell*, Crim. No. RDB-06-179, 2026 WL 601901, at *4 n.6 (D. Md. Mar. 4, 2026). And even if Defendant's youth alone were sufficient, there is no evidence that "his childhood history [was] so unusual as to constitute an extraordinary and compelling reason for a sentence reduction." *Id.* Thus, the Court will not reduce Defendant's sentence.

### B. Reduction of Criminal History Score

Defendant next asks the Court to lower his criminal history score based on the retroactive application of Amendment 821. As Defendant explains, the Bureau of Prisons ("BOP") uses a defendant's criminal history score in numerous ways "which directly affect how [a] sentence is executed." (ECF No. 347 at 7.) For instance, the criminal history score affects the calculation of a prisoner's "PATTERN" score, which "is a risk assessment tool used by BOP to measure an inmate's risk of recidivism." *United States v. Bean*, 759 F. Supp. 3d 306, 310 (D.N.H. 2024). Among other things, a lower PATTERN score can enable a defendant to apply additional earned-time credits to his sentence, thereby reducing his total period of incarceration. *Id.*

There is no debate that, due to Amendment 821, if Defendant were sentenced today, he would no longer receive two status points. Thus, his criminal history score would be 1 and his criminal history category would be I. The only issue is whether the Court has the power to lower Defendant's criminal history score and category even though it is not reducing his sentence. While there does not seem to be any appellate caselaw on this issue, district courts around the country have wrestled with the question. *See Bean*, 759 F. Supp. 3d at 311 (collecting cases).

The debate centers on whether district courts have jurisdiction to reduce a criminal history score as a standalone form of relief. Some courts have held that because § 3582 expressly permits only modification of a "term of imprisonment," it cannot, by implication, permit modification of a criminal history score. *See, e.g., United States v. Bueno-Beltran*, Crim. No. 15-189-1 (RAM),

5

2024 WL 3633641, at *2 (D.P.R. Aug. 2, 2024). But other courts have persuasively responded that this only means that § 3582 is not applicable to the issue at all. *See, e.g., United States v. Thomas*, Crim. No. 1-00058 (KSH), 2025 WL 2383613, at *3–4 (D.N.J. Aug. 18, 2025). The Court agrees with this latter argument. Because "neither the guidelines range nor the criminal history score themselves are part of the sentence," § 3582's text is silent as to the Court's ability to reduce the criminal history score. *Bean*, 759 F. Supp. 3d at 311. Further, this silence cannot itself preclude the Court from reducing Defendant's criminal history score because this would "graft an atextual limitation" into § 3582 that simply does not exist. *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 269 (2023).

Although § 3582 does not prevent the Court from granting relief, other courts have nevertheless denied relief based on the conclusion that "such determinations as PATTERN scores and First Step Act credits belong solely to the Bureau of Prisons and are not reviewable" in a federal district court. *E.g., United States v. Gilreath*, Crim. No. RDB-04-145, 2026 WL 1345557, at *9 (D. Md. May 14, 2026) (collecting cases). While it is true that, under 18 U.S.C. § 3625, BOP determinations such as PATTERN scores and First Step Act credits are not reviewable, the Court respectfully disagrees with its colleagues who hold that § 3625 bars review here. Defendant has not asked the Court to recalculate his PATTERN score or to review any BOP determination at all. He has only requested that the Court lower his criminal history score. As the *Bean* court persuasively explained, "[r]ecalculation of a defendant's criminal history score or category compels no action on the part of BOP. It is BOP's prerogative whether to reclassify [a defendant's] PATTERN score or grant him any administrative relief in light of a new, lower criminal history score." *Bean*, 759 F. Supp. 3d at 313. Thus, while the Court can order that a criminal history score be lowered, the decision to then correspondingly reduce a prisoner's PATTERN score or

6

take any other appropriate action "would be made by BOP, not this [C]ourt." *Id.*; *see also United States v. Carter*, Crim. No. 2:21-00104-TLN, 2025 WL 3458789, at *3 (E.D. Cal. Dec. 2, 2025); *Thomas*, 2025 WL 2383613, at *3. Accordingly, the Court finds that § 3625 does not preclude relief.

Although neither § 3582 nor § 3625 *bar* Defendant's request, the Court still must deny relief because no vehicle *grants* affirmative jurisdiction to reduce a criminal history score as a standalone form of relief. To be sure, several judges have held that a criminal history score may be lowered as an exercise of the ancillary jurisdiction that is derived from the Court's "original jurisdiction over the entirety of the criminal proceeding." *Bean*, 759 F. Supp. 3d at 312; *see also Carter*, 2025 WL 3458789, at *2; *Thomas*, 2025 WL 2383613, at *4. But other judges have concluded the opposite—that ancillary jurisdiction cannot be extended to this situation. *See, e.g.*, *United States v. Lawton*, Crim. No. 12-295, 2026 WL 547901, at *2 (W.D. Pa. Feb. 27, 2026); *United States v. Ladd*, No. 1:21-CR-789, 2024 WL 3647609, at *1 (N.D. Ohio Aug. 5, 2024); *Bueno-Beltran*, 2024 WL 3633641, at *3. This Court agrees with the latter group.

The Fourth Circuit has explained "that in some circumstances, federal courts have inherent authority to resolve disputes even absent an express statutory grant of jurisdiction." *United States v. Mettetal*, 714 F. App'x 230, 233–34 (4th Cir. 2017). But the court has cautioned "that ancillary jurisdiction, while it does exist, must be sparingly exercised. In short, while federal courts have the 'virtually unflagging obligation' to exercise the jurisdiction granted them, they should not rush to annex jurisdiction on purely ancillary grounds." *Id.* at 234 (quoting *Colo. River Water Conservation v. United States*, 424 U.S. 800, 817 (1976)). And, as even the *Bean* court emphasized, a district court can assume ancillary jurisdiction over a later proceeding only if original jurisdiction remains over the initial proceeding. *Bean*, 759 F. Supp. 3d at 312; *see*

*Mettetal*, 714 F. App'x at 233 n.1. However, contrary to the *Bean* court, this Court concludes that it no longer possesses some sort of general, original jurisdiction over the entirety of Defendant's criminal proceeding. That is because, once a sentence has been imposed and a conviction has become final, the Court lacks any power to vacate a defendant's conviction or modify his sentence except in very limited circumstances (such as a motion brought pursuant to 28 U.S.C. § 2255 or 18 U.S.C. § 3582(c)). *E.g., United States v. Mann*, 435 F. App'x 254, 255–56 (4th Cir. 2011); *United States v. Murray*, 1 F. App'x 142, 142 (4th Cir. 2001). But here, Defendant has not shown that he is entitled to relief based on any of these limited circumstances. Thus, there is no source of original jurisdiction from which the Court may derive ancillary jurisdiction to reduce Defendant's criminal history score.

## III. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Request for Reconsideration (ECF No. 347) is DENIED. The Clerk is DIRECTED to mail a copy of this Memorandum and Order to Defendant.

DATED this ___9___ day of June, 2026.

BY THE COURT:

James K. Bredar
United States District Judge